In the Matter of a Member of the Bar
of the Supreme Court of Delaware
Edwin A. TOS, II.

Supreme Court of Delaware.

Submitted: June 19, 1990.
Decided: June 28, 1990.

H. Murray Sawyer, Jr., Asst. Disciplinary Counsel for the Bd. on Professional Responsibility, Wilmington.

Edwin A. Tos, pro se.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

PER CURIAM:

This is a Disciplinary Proceeding. A panel of the Board on Professional Responsibility ("Board")[1] held a hearing involving charges of professional misconduct against the Respondent, Edwin A. Tos ("Tos"). Bd. Prof. Resp. R. 9(d). The charges related to Tos' representation of five separate clients. The Board has issued a final report to this Court ("Report").

The Board found that Tos had violated various provisions of the Delaware Lawyers' Rules of Professional Conduct. Tos has not filed any exceptions to the Board's findings. Therefore, the sole issue to be addressed by this Court is the form of discipline which should be imposed. Arguments concerning that issue have been presented by the parties orally and in writing. The Court has concluded that, *inter alia*, Tos should be suspended from its Bar for a period of one year.

## I

The Board's findings of fact and conclusions of law, with respect to the underlying charges of professional misconduct, as set forth in its Report, are in pertinent part, as follows:

### CASE NO. 22A, 1988

### (Nickson v. Somers)

#### Findings of Fact

On June 9, 1988, Tos Filed an appeal with the Supreme Court on behalf of his client, John T. Nickson. This appeal was taken from a Family Court custody decision. By letter dated June 17, 1988, the Supreme Court notified Tos that he had not filed a certificate stating that the notice of appeal had been served on the appropriate court reporter, as required by Supreme Court Rule 9. The Court directed Tos to file such a certificate by June 24, 1988.

When no certificate was filed, the Supreme Court issued a notice on July 21, 1988 directing Tos to show cause why the appeal should not be dismissed. On July 29, 1988, Tos filed an answer to the notice to show cause, together with a certificate representing that he had served the court reporter, in care of the Family Court Clerk, on June 9, 1988, the date the notice of appeal was filed.

In explaining his delinquency, Tos claimed that he "was unaware that a certificate of service was required to be provided to the Supreme Court". Supreme Court Rule 9(e)(ii) provides:

> In cases where the notice of appeal contains a designation, the attorney for the appellant shall promptly serve a copy of the notice of appeal upon the appropriate court reporter and shall, no later than 7 days after the filing of a notice of appeal, file with the Clerk of the Court a certificate setting forth that service has been accomplished and that the cost of the transcript has been, or will be promptly, paid.

The Court discharged the notice to show cause on August 8, 1988.

By letter dated August 8, 1988, the Family Court Clerk notified Tos of the approximate cost of the transcript of the custody hearing, and that this estimated cost would have to be prepaid. Tos testified that he first phoned his client and then by letter dated September 2, 1988, notified his client that the bill for the Family Court transcript would have to be paid, or the appeal would be dismissed within the next 30 days. The client declined to pay the bill.

By letter dated September 8, 1988, the Family Court Clerk advised the Supreme Court that it had not received payment, despite its August 8, notice. Copies of this letter were sent to Tos and appellee's counsel.

On September 14, 1988, the Supreme Court issued a second notice to show cause, this time directing Tos to explain why the appeal should not be dismissed for failure to diligently prosecute, by not prepaying the cost of the transcript. Tos was re-

---

1. The Board is an agency of this Court, created under Supreme Court Rule 62. *In re Kennedy,* Del.Supr., 472 A.2d 1317, 1318–19 (1984).

quired to respond within ten days of his receipt of the order.

The Court's order to show cause was received in Tos' office on September 16, 1988. Tos failed to file a response by September 26, 1988. On September 28, 1988, the Supreme Court entered an order dismissing the appeal.

Tos testified that he became quite ill on Saturday, September 24, 1988 before the due date of September 26, 1988. On Monday, he went to his doctor who directed him immediately to go home to bed for ten days. Because the date for answering the Court's order to show cause had not been put on Tos' calender [sic], Tos did not recall until September 29, 1988 that a response was due. He then instructed his secretary to write to the Court.

Tos' secretary prepared a letter advising the Supreme Court that Tos had been unable to respond to the order to show cause by September 26, 1988 due to his illness. That undated letter was filed with the Supreme Court on September 30, 1988.

Immediately upon Tos' return to his office on October 3, 1988, he belatedly filed an answer to the Court's order to show cause, representing that his illness had precluded a timely response and that his client had refused to pay for the transcript. The Assistant Disciplinary Counsel confirmed with Tos' doctor and does not dispute that Tos had been ill during this period.

### Conclusions of Law

 In not promptly complying with the Court rules, even after notification from the Court, Tos violated Rule 1.1 of the Delaware Lawyers' Rules of Professional Conduct, ("DLRPC"), which provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

By failing to promptly comply with requests of the Supreme Court and the Family Court Clerk, Tos violated DLRPC 1.3, which provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

By not complying with the Supreme Court's directions of June 17, 1988 and its notice to show cause of September 14, 1988, Tos violated DLRPC 3.4(c), which provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal...."

In addition, by not timely complying with the Supreme Court's direction of June 17, 1988 and its notice to show cause of September 14, 1988, Tos violated DLRPC 8.4(d), which provides: "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

### CASE NO. 22B, 1988

### (Hathaway v. Ferrell)

### Findings of Fact

On June 20, 1988, Tos filed an appeal with the Supreme Court on behalf of his client, Robert Hathaway. This appeal was taken from a decision of a Family Court Master, denying a motion to stop a wage attachment for child support.

By letter dated June 29, 1988, the Supreme Court notified Tos that he had not filed a certificate stating that the notice of appeal had been served on the appropriate court reporter, as required by Supreme Court Rule 9. Tos was directed to file such a certificate by July 6, 1988.

On July 8, 1988, Tos filed a certificate of service representing that he had served a copy of a notice of appeal on the court reporter, in care of the Family Court Clerk on that same day. By letter dated August 8, 1988, the Family Court Clerk notified Tos of the approximate cost of the transcript of the hearing before the Master and stated that this estimated cost would have to be prepaid.

By letter dated August 19, 1988, Tos notified his client that he should remit $54.00 to cover the cost of the transcript. Tos received the $54.00 payment from his client on or about September 7, 1988. By letter dated September 8, 1988, the Family Court advised the Supreme Court that it had not received payment, despite its Au-

gust 8, notice. Copies of this letter were sent to Tos and appellee's counsel.

On September 14, 1988, the Supreme Court issued a notice directing Tos to show cause why the appeal should not be dismissed for failure to diligently prosecute, by not prepaying the cost of the transcript. Tos was required to respond within ten days of his receipt of the order. Also on September 14, 1988, the Family Court received Tos' payment for the transcript.

The Court's order to show cause was received in Tos' office on September 16, 1988. Since no response was filed by September 26, on September 28, 1988, the Supreme Court entered an order dismissing the appeal.

Once again, Tos testified that he became quite ill on Saturday, September 24, 1988 before the due date of September 26, 1988. On Monday, he went to his doctor who directed him to go home immediately to bed for ten days. Because the date for answering the Court's order to show cause had not been put on Tos' calender [sic], Tos did not recall until September 29, 1988 that a response was due. He then instructed his secretary to write to the Court.

Following his direction, Tos' secretary prepared a letter advising the Supreme Court that Tos had been unable to respond by September 26, 1988 due to his illness. That undated letter was filed with the Supreme Court on September 30, 1988.

On October 3, 1988, Tos belatedly filed an answer to the Court's order to show cause, explaining that although he had received his client's payment on or about September 7, 1988, the check from Tos' firm to the Family Court "inadvertently sat on his secretaries [sic] desk for a signature for approximately 5 days. This oversight was discovered upon receipt of the Rule to Show Cause from the Court."

On October 4, 1988, Tos filed a motion for reargument seeking to vacate the dismissal. This motion was granted by the Court on October 18, 1988. The appeal was later dismissed on unrelated grounds.

*Conclusions of Law*

In not timely complying with Court Rules even after notification from the Court, Tos violated DLRPC 1.1, which provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

By failing to promptly comply with requests from the Supreme Court and Family Court Clerk, Tos violated DLRPC 1.3, which provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

By not timely complying with the Supreme Court's notice to show cause, Tos violated DLRPC 3.4(c), which provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal...."

By not timely complying with the Court's notice to show cause, Tos violated DLRPC 8.4(d), which provides: "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

### CASE NO. 5A, 1989

#### (Brazas v. Brazas)

*Findings of Fact*

The facts in this matter were undisputed. On October 13, 1988, Tos filed an appeal with the Supreme Court on behalf of his client, Robert Brazas. This appeal was taken from a Family Court decision regarding property division and alimony.

By letter dated December 23, 1988, the Supreme Court Clerk notified Tos and appellee's counsel that the record in this appeal had been received in that office on December 21, 1988. Therefore, Tos' opening brief was due on January 20, 1989.

On January 20, 1989, Tos filed a motion for an extension of time during which to file his opening brief. Among the reasons given for the request, Tos claimed that he was "unaware" that the transcript was ready to be picked up at Family Court for a period of 15 days due to "miscommunication in his office staff". Appellee's counsel filed a response, stating that he had been

notified on November 29, 1988 that the Family Court transcript was prepared for counsel.

By order dated January 25, 1989, the Supreme Court denied Tos' motion for an extension and directed him to file his opening brief on or before February 3, 1989, "in default of which the Court would entertain a motion to show cause why the appeal should not be dismissed." Notwithstanding the very clear terms of the Court's January 25, 1989 order, Tos filed a second motion for an extension on February 3, 1989.

Appellee's counsel filed a motion to dismiss on February 7, 1989. In light of Tos' disregard for and neglect of the Court's prior orders, on February 23, 1989, the Court entered an order granting the motion to dismiss. Tos filed a motion for reargument, which was denied by the Court on March 17, 1989.

## Conclusions of Law

■ In not complying with the Supreme Court's denial of an extension and order to file an opening brief on February 3, 1989, Tos violated Rule 1.1 of the Delaware Lawyers' Rules of Professional Conduct, ("DLRPC"), which provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

In not complying with the Supreme Court's denial of an extension and order to file an opening brief on February 3, 1989, Tos violated DLRPC 1.3, which provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Tos was charged in the Petition with violating DLRPC 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.") The comment to this Rule suggests that the rule is intended to apply to dilatory conduct with some ulterior motive or purpose. While the Board was clearly disturbed by Tos' conduct in disregarding and neglecting the Court's prior orders, the Board finds that clear and convincing evidence was not presented to establish a violation of DLRPC 3.2.

Tos was also charged in the Petition with violating DLRPC 3.4(c) ("A lawyer shall not knowingly disobey an obligation under the rules of a tribunal. . . ."). The Board finds that the filing by Tos of a second motion for an extension on February 3, 1989, did not constitute a knowing disobedience of his obligations under the rules of a tribunal.

■ In his handling of this appeal, Tos violated DLRPC 8.4(d), which provides: "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

## CASE NO. 5B, 1989

### (Mathews v. Mathews)

#### Findings of Fact

On or about September 15, 1988, Mrs. Elizabeth J. Mathews met with Harry J. Franks, Jr. ("Franks") at the Kirkwood Highway offices of Mekler & Tos (2207 St. James–Church Road in Wilmington) for an initial consultation regarding a divorce. Franks was a law clerk then employed by the law firm of Mekler & Tos.

At the initial consultation, Mrs. Mathews explained to Franks that her husband lived in Wisconsin, but was presently in Delaware and available to help accomplish the divorce which he would not contest. She indicated that she wanted to expedite the divorce proceedings. Although Mrs. Mathews did not remember the conversation, both Tos and Franks testified that they talked to Mrs. Mathews on the telephone after her first meeting with Franks. Tos testified that he explained to her the procedures to obtain an uncontested divorce.

On or about September 16, 1988, Mrs. Mathews returned to the Kirkwood Highway offices, with her husband, Frank J. Mathews, to meet with Franks and to sign the necessary affidavit of service for filing with the petition for divorce. Franks advised Mr. and Mrs. Mathews that the petition for divorce would have to be filed in

Delaware and served upon Mr. Mathews in Wisconsin, and that there was no means of expediting this process.

At the time of the second meeting with Franks on September 16, Mrs. Mathews gave him a check in the amount of $430.00 ($350.00 being an advance fee and the remainder to cover costs). Thereafter, since Mrs. Mathews had not received any notice that her petition had actually been filed and since her husband, who had, in the meantime, returned to Wisconsin, had not received any papers, Mrs. Mathews telephoned Franks at the offices of Mekler & Tos on several occasions to inquire into the status of her divorce. Franks did not return her calls.

Mrs. Mathews testified that it was not until Mrs. Mathews called the offices of Mekler & Tos on or about October 5, 1988, that she learned from a receptionist or secretary that Franks was not an attorney, but rather a law clerk. Mr. Franks testified that, although it was his routine practice as a law clerk to inform clients that he was not an attorney, he was not absolutely certain he had told Mrs. Mathews he was not an attorney.

Tos notarized Mrs. Mathews' signature on the petition for divorce notwithstanding the fact that he did not witness her signing the petition but relied on Frank's statement that Mrs. Mathews had signed the petition. That petition, with Tos' notarization, was filed with the Family Court on November 3, 1988. Tos testified at the hearing on October 27, 1989 that it was not his usual practice to notarize signatures which he had not witnessed, and he admitted that he should not have notarized Mrs. Mathews' signature under the circumstances.

Frustrated by her dealings with the firm of Mekler & Tos, in mid-November 1988, Mrs. Mathews retained new counsel, Thomas D. Shellenberger, Esquire, ("Shellenberger"). By letter dated December 8, 1988, Shellenberger advised Tos that he had been retained and, on behalf of Mrs. Mathews, he requested transfer of the file and an accounting of the advance fee paid. When no response was received, Shellenberger repeated his request by letter dated December 22, 1988. By letter dated February 8, 1989, Disciplinary Counsel notified Tos of a complaint made by Mrs. Mathews regarding his failure to transfer the file to Shellenberger and to account for the advance fee paid.

Shellenberger received no response to his letters of December 8 and December 22, 1988, until Tos' letter dated February 10, 1989, forwarding "the entire file" in this matter, which consisted of the petition for divorce (filed on November 3, 1988); an October 17, 1988 letter to Nebraska requesting the Mathews' certified marriage certificate; a receipt for payment of that certificate; and the Family Court's 13 *Del.C.* § 1509 preliminary injunction order, routinely issued upon the filing of a petition for divorce.

On February 13, 1989, Shellenberger forwarded to Tos a stipulation for substitution of counsel for Mrs. Mathews. On February 15, 1989, Shellenberger called Tos' office and was advised by his secretary that Tos would sign and return the stipulation the following day. When Shellenberger did not receive the signed stipulation, he wrote to Tos again on February 20, 1989, advising him that Mrs. Mathews was anxious to proceed. When Shellenberger still did not receive the signed stipulation, on February 22, 1989, he filed a motion to strike Tos' appearance, a copy of which was served upon Tos.

On February 23, 1989, Shellenberger received Tos' letter, bearing the date February 22, finally enclosing the signed stipulation. On February 24, 1989, Shellenberger filed the signed stipulation and withdrew his motion to strike Tos' appearance. On February 28, 1989, Shellenberger filed a motion to amend Mrs. Mathews' petition for divorce, correcting errors in the original petition drafted by Franks and filed by Tos. To date, despite Shellenberger's and Disciplinary Counsel's requests that Tos account for the advance fee paid by Mrs. Mathews, Tos has not rendered an accounting or refunded the unearned portion of the advance fee paid.

**614**

### Conclusions of Law

 In his preparation of the petition for divorce and his failure to discuss with Mrs. Mathews the importance of requesting ancillary relief in the divorce petition, Tos violated Rule 1.1 of the DLRPC, which provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

In his delay in responding to Shellenberger's request for Mrs. Mathews' file, Tos violated DLRPC 1.3, which provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

In failing to respond (or have Franks respond) to Mrs. Mathews' inquiries and to Shellenberger's request for Mrs. Mathews' files, Tos violated DLRPC 1.4(a), which provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

In failing promptly to move to withdraw or to execute the stipulation for substitution of counsel prepared by Shellenberger, Tos violated DLRPC 1.16(a)(3), which provides: "[W]here representation has commenced, [a lawyer] shall withdraw from the representation of a client if the lawyer is discharged."

In failing promptly to surrender to Shellenberger Mrs. Mathews' file and in failing to provide an accounting of Mrs. Mathews' funds and to refund the unearned portion of the advance fee paid, Tos violated DLRPC 1.16(d), which provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest such as . . . surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. . . ."

The Board finds there was not clear and convincing evidence to establish that Tos violated DLRPC 5.3(b), which provides: "With respect to a nonlawyer employed . . . by . . . a lawyer, a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." Tos testified at the hearing, consistent with Frank's testimony, that Tos had stressed to his clerks the importance of making clear to clients that the clerks were not attorneys and that they were only collecting information on behalf of the attorneys.

In falsely notarizing Mrs. Mathews' signature on the affidavit verifying the allegations set forth in the petition for divorce and filing that false affidavit with Family Court, Tos violated DLRPC 8.4(c), which provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

In his handling of Mrs. Mathews' divorce, in his false notarizing of an affidavit and in his delay in cooperating with Mrs. Mathews' new counsel, Tos violated DLRPC 8.4(d), which provides: "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

### CASE NO. 5C, 1989

### (Bowers Name Change)

### Findings of Fact

In September 1983, John Bowers ("Bowers") retained Tos to file a name change petition for his two minor children (a son and a daughter) and paid $200.00 as an advance fee, plus $89.25 to cover anticipated costs.

On June 1, 1984, Tos filed a name change petition in the Court of Common Pleas. The matter was set for hearing on June 22, 1984. At that time, Bowers advised the Court that his son had decided not to change his name. He did wish to proceed, however, with changing his daughter's name. The Court refused to grant the change of Mr. Bowers' daughter's name without an amended petition and directed Tos to refile the name change petition.

Tos testified that, because of his heavy work load, he informed Mr. Bowers that it

would be some time before he would have time to prepare a new petition. Bowers testified that he called Tos five or six months later. Tos told Bowers that he had to prepare a new petition. On April 10, 1985, Tos sent Bowers a letter informing him that a new petition was "waiting to go" and inviting Bowers to call him to finish the matter. Tos claims he did not hear from Bowers in response to his memo.

Both Bowers and Tos recalled that Bowers went to see Tos at the First Federal Building, in the spring of 1986, when Tos was employed as an associate with Howard Berg, Esquire, to inquire why the new petition was taking so long. Bowers testified that Tos told him he would take care of the matter. Bowers claimed that he called Tos several times in the several months following that encounter but that Tos failed to return the telephone calls. It was not until a year and a half later that there were communications between Tos and Bowers. By letter dated January 20, 1988, Bowers wrote to Tos complaining about the status of this matter and demanding a refund of the fees paid.

Tos responded by letter dated April 4, 1988, stating in part that further work would require an additional fee. On November 29, 1988, Bowers went to Tos' office and demanded a refund of the advance fee paid. Tos gave him a refund in the amount of $200.00.

In response to a request from Disciplinary Counsel, Tos submitted a letter to Disciplinary Counsel dated January 24, 1989, responding to Bowers' complaint of neglect and lack of communication. With that letter, Tos submitted "photocopies of all documents in [his] file relating to Mr. Bowers [sic] name change." By letter dated January 28, 1989, Disciplinary Counsel wrote to Tos to verify that he had provided his entire file concerning the Bowers name change petition. By letter dated February 8, 1989, Tos repeated that he had supplied to Disciplinary Counsel copies of his entire file.

The file produced by Tos to Disciplinary Counsel did not contain copies of the following: Bowers' January 20, 1988 letter to Tos complaining; Tos' April 4, 1988 response; and a "memo" from Tos to Bowers dated "4/10", prepared in April, 1985, stating: "I have the new petitions in my file waiting to go. Call me next week at my new number and lets arrange a time to get this thing finished once and for all, before the next school year starts." Disciplinary Counsel presented no evidence and said he had none to establish that Tos had copies of these exhibits or that he had deliberately withheld these documents.

*Conclusions of Law*

Tos was charged with violating DLRPC 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.") in his handling of the name change petition. The Board finds that clear and convincing evidence to prove this violation was not presented and hence finds no violation of DLRPC 1.1.

Tos was charged with violating DLRPC 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.") in his handling of the name change petition. Although the Board does not understand why a simple revision of a petition for a name change could not be done fairly promptly, the evidence suggests that Tos warned Bowers that the revision would take some time and that Bowers was slow in responding to Tos' memo of April 10, 1985, leading Tos to conclude that Bowers was not interested in proceeding with the matter. While the Board does not condone Tos' failure to respond to Bowers' phone calls, it does not find that there is clear and convincing evidence of a violation of DLRPC 1.3.

Tos was charged with violating DLRPC 1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.") in his failing to respond to Mr. Bowers' inquiries. While there was testimony by Bowers that Tos failed to return Bowers' phone calls on several occasions in 1986, Bowers appears

to have lost interest in the matter until a year and a half later in January, 1988. Considering the circumstances that this failure occurred almost two years after the original name change petition had been filed and that Bowers had apparently failed to respond to Tos' memo of April, 1985, a year earlier, requesting Bowers to contact him to proceed with the petition, the Board finds a violation of DLRPC 1.4(a) was not established by clear and convincing evidence that Tos should have known Bowers was still seeking information on the status of the name change petition.

Tos was charged with violating DLRPC 8.1(a) ("[A] lawyer in connection with ... a disciplinary matter, shall not knowingly make a false statement of material fact") in failing to produce documents identified in Paragraph 90 of the Petition and stating that he had produced his "entire file." The Board grants Tos' motion to dismiss this Count based on the fact that there was no evidence presented that Tos had copies of those exhibits in his file at the time he delivered that file to Disciplinary Counsel or that he deliberately withheld those documents. Moreover, a review of the three documents indicates that they were not necessarily adverse to Tos and indeed, contained some information helpful to Tos' position. Therefore, Tos would have had no apparent motivation to withhold the documents.

## CASE NO. 5D, 1989

### (Violation of Disciplinary Order)

#### Findings of Fact

 In Board Case No. 1017 (Supr.Ct. No. 411, 1987), a public reprimand was imposed. The Supreme Court's March 28, 1988 order closing the proceeding, directed that "the costs in this case are to be paid by Tos."

Despite Disciplinary Counsel's several letters to Tos over the course of a year, Tos did not pay these costs. Tos claimed that financial problems with his law practice prevented him from timely paying the *ordered* costs. Yet, he failed to communicate with Disciplinary Counsel to make alternate arrangements or explain his failure to pay. After numerous broken promises by Tos concerning his intent to pay off this obligation by making regular "installment" payments, Disciplinary Counsel filed a motion for contempt with this Court on March 1, 1989. It was only in response to this motion that Tos finally paid the balance of all costs assessed in this case, nearly one year after entry of the order directing him to pay costs.

The Board finds that Tos' violation of the Court's March 28, 1988 order provides grounds for discipline under Board on Professional Responsibility Rule 7(4), which provides: "Discipline may be imposed for any of the following: ... [v]iolation of any discipline or disability rule or order." The Board finds inexcusable Tos' failure to communicate with Disciplinary Counsel if his financial difficulties prevented timely payments.

### Board's Finding of Aggravating Factors

The Board is deeply concerned that this Petition is the fourth disciplinary matter involving Tos. On October 23, 1987, a private admonition was imposed against Tos for violation of DLRPC 1.4(a), DLRPC 1.1, and DLRPC 1.16(d). A public reprimand was imposed by the Board against Tos along with a commitment by Tos, approved by the Delaware Supreme Court on March 28, 1988, that his practice be limited by excluding the transaction of real estate settlements until he made application and received approval by the Board to resume conducting real estate settlements. Another private admonition was issued against Tos on September 15, 1988 for violation of DLRPC 8.4(c).

### Board's Finding of Mitigating Circumstances

While not absolving Tos of blame for earlier delays, the Board finds that Tos' illness on September 26, 1989, which was verified and confirmed by Assistant Disciplinary Counsel, should be considered as a mitigating circumstance in explaining his failure to timely respond to the second notice to show cause of the Delaware Su-

preme Court in the *Nickson v. Somers* case and to the order to show cause issued in the *Hathaway v. Ferrell* case. The Board also finds Tos' acknowledgment of his problems and his efforts to seek professional help to be a mitigating circumstance.

## II

In the proceedings before this Court, no exceptions to the Report of the Board were filed by Tos.Bd.Prof.Resp.R. 9(e). Nevertheless, we have made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *Matter of Higgins,* Del.Supr., 565 A.2d 901, 906–07 (1989); *In re Lewis,* Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy,* Del. Supr., 472 A.2d 1317, 1326 (1984); *Matter of Reed,* Del.Supr., 429 A.2d 987, 991 (1981). We review the Board's conclusions of law *de novo. Matter of Berl,* Del.Supr., 540 A.2d 410, 413 (1988). We are satisfied that the record before us clearly supports the findings of fact and the conclusions of law made by the Board in this case. *Matter of Sullivan,* Del.Supr., 530 A.2d 1115, 1117 (1987); *In re Lewis,* Del.Supr., 528 A.2d 1192 (1987); *In re Sanders,* Del.Supr., 498 A.2d 148 (1985); *In re Frabizzio,* Del. Supr., 498 A.2d 1076 (1985). *See also In re Ryan,* Del.Supr., 498 A.2d 515 (1985).

## III

Tos has expressed remorse. Tos attributes his present and his past disciplinary problems to an inability to simultaneously manage his own law office and the affairs of his clients. Within the last year, Tos has eliminated the demands of managing the business aspects of his practice by becoming an associate with another law firm. Tos states that, in addition to now being able to give his clients' concerns his undivided attention, the system of "checks" at this law firm make it practically impossible for clients matters to be neglected.

Tos has also contacted the counselors of the Professional Guidance Committee of the Delaware State Bar Association. DLRPC 8.3(d). Apparently, those counselors concluded that the need for further structural psychological assistance should be left to Tos' discretion. In lieu of professional counselling, Tos states that he has done independent reading in those areas where he perceives a need for personal improvement. Tos suggests that the appropriate sanction to be imposed by this Court is a private admonition and a requirement that he perform two hundred (200) hours of service under the auspices of the Lawyer's Assistance Program.

Assistant Disciplinary Counsel does not question the sincerity of Tos' remorse for neglecting his client's affairs in the past or the significance of Tos' efforts to analyze his own problems and to change the nature of his law practice. However, Assistant Disciplinary Counsel argues that Tos should not be absolved from responsibility for his present disciplinary problems, because they are the latest events in an unfortunate history of professional deficiency, despite progressively severe prior sanctions. Assistant Disciplinary Counsel recommends that Tos should be suspended from the Delaware Bar for a period of three years.

## IV

We have considered the recommendations of Assistant Disciplinary Counsel and Tos. We have considered the Board's Report. We have considered the fact that Tos has voluntarily rearranged his practice of law, his remorse for the damage caused by his misconduct, and his efforts to rehabilitate himself, albeit without professional counseling. We have also considered the number and the nature of Tos' prior violations of the Delaware Lawyers' Rules of Professional Conduct.

We conclude that the record established in these proceedings requires, *inter alia,* that Tos be suspended from the Bar of this Court for a period of one year. Accordingly, IT IS ADJUDGED and ORDERED that Edwin A. Tos be disciplined as follows:

1. That Tos be prohibited and suspended from engaging in the practice of law, as

a member of the Delaware Bar, for a period of one year, commencing July 9, 1990 and ending on July 8, 1991.

2. That during such period, Tos shall not (a) share in any legal fees arising from clients or cases referred by him, during the period of suspension, to any other attorney, or (b) share in any legal fees earned for services by others during such period of suspension.

3. That Tos shall comply with the provisions of Rule 24 of the Rules of the Board on Professional Responsibility.

4. That Tos shall arrange with another member of the Delaware Bar to protect the interests of any of his clients during the period of suspension, and shall submit to this Court on or before August 15, 1990, a certificate of compliance with this paragraph, co-signed by the attorney who has undertaken the said assignment.

5. That this Opinion and Order be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.